UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| STANDARD METALS PROCESSING, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.:  4:14-cv-00998-SGC ) |
| STEVEN E. FLECHNER, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

This is a declaratory judgment action filed by plaintiff, Standard Metals Processing, Inc.—formerly known as Standard Gold Holdings, Inc. and Standard Gold, Inc.—concerning a January 21, 2011 amendment of a stock option agreement (the "Amendment") and subsequent attempts by defendant, Steven E. Flechner, to exercise options granted under the Amendment.  As relief, Standard Metals seeks a declaration that the Amendment is invalid and either: (1) Flechner's options under the Amendment are limited to a pro-rata portion of available shares; or (2) all option rights created by the Amendment are void.  (Doc. 1-2 at 6).

Currently pending are Flechner's motion to dismiss for lack of personal jurisdiction (Doc. 3),[1] Standard Metals' motion for leave to file an amended

---

[1] As described in more detail below, Flechner's motion to dismiss sought the alternative relief of transfer to the United States District Court for the District of Colorado, where Flechner filed a parallel lawsuit against Standard Metals for failure to honor the same stock options at issue here.

complaint (Doc. 20), and Flechner's motion for leave to file a sur-reply to arguments regarding personal jurisdiction raised by Standard Metals in response to the undersigned's order to show cause (Doc. 35). For the reasons that follow, the undersigned concludes personal jurisdiction over Flechner is lacking and this matter is due to be dismissed.

## I.     PROCEDURAL HISTORY

Standard Metals originally filed its complaint for declaratory judgment on April 21, 2014, in the Circuit Court of Etowah County, Alabama, naming Flechner and fictitious parties. (Doc. 1-2). On May 28, 2014, Flechner removed, invoking federal diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Once removed, the matter was assigned to a magistrate judge pursuant to Local Rule 72.1 and the court's General Order for Referral of Civil Matters to the United States Magistrate Judges, dated January 14, 2013. Before the matter was reassigned to the undersigned, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.§ 636(c). (Doc. 8).

---

However, Flechner has since withdrawn his request to transfer this matter, relying solely on his arguments regarding lack of personal jurisdiction. (Doc. 33 at 1).

The motion to dismiss also sought dismissal due to the existence of a forum selection clause between the parties, identifying Colorado as the exclusive forum for any disputes. (Doc. 3 at 6-9). Standard Metals has responded that the plain language of the forum selection clause makes clear that it applies only to lawsuits initiated by Flechner and does not bind Standard Metals. (*e.g.* Doc. 32 at 8-10). It appears Flechner has abandoned the arguments based on the forum selection clause as well. (*See* Doc. 33 at 1) (Flechner "relies exclusively on his Rule 12(b)(2) Motion to Dismiss due to the absence of personal jurisdiction").

After Flechner filed the pending motion to dismiss, Standard Metals filed a motion to remand (Doc. 6). On Standard Metals' motion (Doc. 10), the previously-assigned magistrate judge granted a stay of briefing on Flechner's motion to dismiss until after a ruling on the motion to remand (Doc. 11). However, Standard Metals subsequently briefed the issues raised in Flechner's motion to dismiss. (Doc. 28 at 3-9; Doc. 34). Because Standard Metals has advanced previously un-briefed arguments regarding personal jurisdiction, Flechner's motion for leave to reply (Doc. 35) is **GRANTED** and the undersigned has considered the arguments set forth therein.

The undersigned denied Standard Metals' motion to remand on December 30, 2014. (Doc. 29). On the same day, the undersigned entered an order acknowledging Standard Metals' response in opposition to Flechner's arguments regarding personal jurisdiction and ordering Standard Metals to show cause why this matter should not be transferred to the District of Colorado, where Flechner filed a parallel lawsuit. (Doc. 30). As noted above, Flechner has since withdrawn his request for the alternative relief of transfer. Accordingly, all pending motions are fully briefed and ripe for adjudication.

## II.   FACTS

Standard Metals currently maintains its principal place of business in Alabama. The complaint alleges Flechner, a Colorado resident, "engaged in

numerous actions and communications in Etowah County, Alabama, related to the subject matter of this action." (Doc. 1-2 at 3). The complaint asserts jurisdiction and venue is proper in Alabama "because a substantial part of the events or omissions giving rise to the claims occurred in Etowah County, Alabama, and based on Defendant's repeated communications to Plaintiff in Etowah County, Alabama." (*Id.* at 4).

When the Amendment was passed, Flechner was President of Standard Metals' predecessor, Standard Gold. Standard Metals alleges the Amendment was improper because it was not approved by stockholders and because there are not enough shares to honor the options provided for in the Amendment. (Doc. l-2 at 4-5). The complaint alleges subsequent corporate officers discovered the impropriety of the Amendment and devised a plan to divide on a pro rata basis the available pre-Amendment shares. (Doc. 1-2 at 5). On March 19, 2014, Flechner sent formal written notice to Standard Metals in Alabama regarding his intention to exercise stock options under the Amendment. (Doc. 1-2 at 5). Standard Metals offered to honor the pro-rata portion of Flechner's shares, but Flechner refused, demanding to exercise all of his options under the Amendment. (Doc. 1-2 at 5).

The motion to dismiss is supported by Flechner's declaration, which asserts the following relevant facts.[2] Flechner is a resident and citizen of Colorado. (Doc. 3-1 at 2). He has never been a resident or citizen of Alabama and has never visited Alabama for any purpose. (Doc. 3-1 at 2-3). Flechner does not do business in Alabama, is not licensed to do so, and he does not own any property located in this state. (Doc. 3-1 at 3). From April 1, 2010 to May 19, 2011, Flechner served as President of Standard Metals' predecessor, Standard Gold, Inc. (Doc. 3-1 at 3). During Flechner's tenure as President, Standard Gold was a Colorado corporation with its principal place of business in Denver, Colorado. (Doc. 3-1 at 3). While President, Flechner conducted business from Denver, Colorado, and did not complete work or have contacts within Alabama. (*Id.*).

Flechner entered into agreements with Standard Gold in 2010 and 2011, including an employment agreement and two stock option agreements. (Doc. 3-1 at 4). On June 1, 2011, Flechner and Standard Gold executed a separation agreement, which included a provision requiring any options to be exercised within three years. (Doc. 3-1 at 4; *see also* Doc. 3-5 at 3). Each of these agreements was executed in Colorado. (Doc. 3-1 at 4). At some point after Flechner separated from the company, Standard Gold changed its name and incorporated in Nevada. (Doc. 3-1 at 3). In or about December, 2012, approximately eighteen (18) months

---

[2] On a motion to dismiss for lack of personal jurisdiction, reliance on matters outside the pleadings does not require conversion to a motion for summary judgment. *See Meier v. Sun Intern. Hotels, Ltd.,* 288 F.3d 1264 (11th Cir. 2002).

after Flechner and Standard Metals parted ways, Standard Metals moved its principal place of business to Gadsden, Alabama. (Doc. 3-1 at 3).

Between February 26, 2014, and April 1, 2014, Flechner exercised all of his stock options. (Doc. 3-1 at 4). Standard Metals refused to issue the shares of common stock, informing Flechner there were insufficient shares available to satisfy his demand. (Doc. 3-1 at 4). Between January 31, 2014, and April 17, 2014, Flechner states he sent approximately twenty-three e-mails to individuals affiliated with Standard Metals. (Doc. 3-1 at 4). Of these e-mails, Flechner states: (1) fourteen were sent to Standard Metals' counsel in New York City; (2) five addressed the exercise of stock options and were sent to individuals in Alabama; and (3) the remaining four emails "did not address the subject matter of this litigation and included personal correspondence like Easter greetings and communications on unrelated matters." (Doc. 3-1 at 4).

Eight days after Standard Metals filed its complaint in Etowah County, Flechner filed a lawsuit against Standard Metals in the United States District Court for the District of Colorado, styled as *Flechner v. Standard Metals Processing, Inc.,* No. 14-1213 (D. Colo. filed April 29, 2014). (*See* Doc. 13-1). The parallel lawsuit arises from precisely the same controversy and asserts claims for breach of contract, promissory estoppel, unjust enrichment, and declaratory judgment regarding the number of shares available and Standard Metals' obligation to honor

Flechner's stock options. (Doc. 13-1 at 8-12). The Colorado action has been stayed pending resolution of the motion to dismiss pending here. (Doc. 36).

### III. STANDARD OF REVIEW

A Rule 12(b)(2) motion tests a court's exercise of personal jurisdiction over a defendant. *See* FED. R. CIV. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant challenges personal jurisdiction by submitting affidavit evidence in objection to personal jurisdiction, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002).

When the issue of personal jurisdiction is decided on the evidence, but without a discretionary hearing, a plaintiff demonstrates a prima facie case of personal jurisdiction by submitting evidence sufficient to defeat a motion made pursuant to Rule 50(a) of the FEDERAL RULES OF CIVIL PROCEDURE. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1317 (11th Cir.2006). When taken on the papers, a court construes the complaint's allegations as true if they are uncontroverted by affidavits or deposition testimony, *id.* at 1317, and where there are conflicts, "construe[s] all reasonable inferences in favor of the plaintiffs" *Whitney Info.*

7

*Network, Inc. v. Xcentric Ventures, LLC,* 199 Fed. Appx. 738, 741 (11th Cir.2006) (punctuation omitted) (quoting *Meier,* 288 F.3d at 1269).

## IV. ANALYSIS

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990). First, the jurisdictional question under the state long-arm statute is considered. *Id*. If there is a basis for the assertion of personal jurisdiction under the state statute, that is, minimum contacts with the forum, the next determination is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Cable/Home Communication Corp.,* 902 F.2d at 855. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

The reach of the Alabama long-arm statute is a matter of Alabama law. Federal courts are required to construe it as would the Supreme Court of Alabama. *Giraldo v. Drummond Co., Inc.*, No. 09-1041-RDP, 2012 WL 2358306, *3 (N.D. Ala., June 20, 2012); *see Oriental Imports & Exports, Inc. v. Maduro & Curiel's*

*Bank, N.V.,* 701 F.2d 889, 890–891 (11th Cir.1983).  Alabama's long-arm statute permits personal jurisdiction to the extent it "is not inconsistent with the constitution of this state or the Constitution of the United States." ALA. R. CIV. P. 4.2(b).  Thus, the real question here is whether assertion of personal jurisdiction over Standard Metals comports with the Fourteenth Amendment's Due Process Clause.  *See Olivier v. Merritt Dredging Co., Inc.,* 979 F.2d 827, 830 (11th Cir.1992) (citing *Alabama Waterproofing Co., Inc. v. Hanby,* 431 So.2d 141, 145 (Ala.1983)).  The Due Process Clause of the Fourteenth Amendment is satisfied where the defendant has minimum contacts with the forum state and where the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 830–831.

There are two types of personal jurisdiction: specific and general.  Specific jurisdiction applies where a defendant's contacts with the forum state arise from or are related to the claims asserted.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984).  Alternatively, a court exercises general jurisdiction when a lawsuit does not arise from or relate to the defendant's contacts with the forum.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.15 (1985).  The nature and quality of the contacts may vary depending on whether the type of jurisdiction being asserted is specific or general.  *See Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir.2000).   Here, Standard Metals'

contention that personal jurisdiction over Flechner is appropriate is based on communications Flechner sent to Standard Metals in Alabama regarding his exercise of stock options. This is clearly an invocation of specific jurisdiction. Moreover, Flechner's unrebutted assertions regarding his lack of contacts with Alabama make it clear that general jurisdiction over Flechner is non-existent.

A court may exercise specific jurisdiction over a nonresident defendant where he has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King,* 471 U.S. at 473, 475 (internal quotations and citations omitted).

> Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Sherritt,* 216 F.3d at 1291 (internal quotations and citations omitted). The minimum contact requirement is grounded in fairness and assures "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The Eleventh Circuit does not use "mechanical or quantitative tests" to determine whether litigation arises out of a defendant's activities in the forum state. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009). The defendant's activities must be related to

the "operative facts of the controversy." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 n.3 (11th Cir. 2008). Additionally, "[q]uestions of specific jurisdiction are examined in the context of the particular claims asserted [and] a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Giraldo*, 2012 WL 2358306 at *5 (internal quotation marks omitted) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

Email communications, telephone calls, and letters may provide sufficient contacts for the exercise of personal jurisdiction. *See Burger King,* 471 U.S. at 462, 476. Indeed, even a single communication directed to the forum state can satisfy due process requirements. *Id.* at 475 n.18. The proper focus for analyzing these contacts is whether they represent the defendant's purposeful availment "of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474. Moreover:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits of its laws.

*Hanson*, 357 U.S. at 253. The purposeful availment requirement "ensures that

defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 75 (internal quotations and citations omitted). However, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

### 1. Flechner Has Not Purposefully Availed Himself of Personal Jurisdiction in Alabama.

Standard Metals contends Flechner's emails to Standard Metals in Alabama establish specific personal jurisdiction. The uncontroverted evidence, viewed in light of the Rule 12(b)(2) standard, establishes that Flechner sent a total of nine emails to Alabama between January 31, 2014, and April 17, 2014. (Doc. 3-1 at 4; *see* Doc. 28 at 6).[3] Of these nine communications, it is also undisputed that five emails addressed the stock options that are the subject of this lawsuit. (Doc. 3-1; *see* Doc. 28 at 6).

Both parties have cited the Tenth Circuit's opinion in *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988), as supporting their respective positions. (*E.g.* Doc. 28 at 8; Doc. 33 at 2-4). In *Rambo*, two plaintiff

---

[3] In its brief Standard Metals asserts Flechner mailed a Notice of Exercise of Options to Standard Metals physical address in Gadsden. (Doc. 28 at 6). Review of the communication reveals it was addressed to Standard Metals in Gadsden and sent via email. (Doc. 28-2). Because Standard Metals has not disputed the total number of communications asserted by Flechner, the record shows this Notice of Exercise is included in Flechner's computations.

insureds sued their insurer and a third party for breach of contract and bad faith regarding a claim for theft of a tractor trailer. The defendant insurer was a citizen of Georgia and, at the time the policy was issued, the plaintiff insureds were citizens of Alabama. After plaintiffs filed their claim under the policy, they moved to Oklahoma and initiated the lawsuit there. In response to a motion to dismiss for lack of personal jurisdiction, the plaintiffs relied on communications the defendant insurer sent to them in Oklahoma after plaintiffs' relocation. The trial court granted the motion to dismiss and the Tenth Circuit affirmed, finding that the defendant insurer only directed communications to Oklahoma because the plaintiffs unilaterally moved there after the events giving rise to lawsuit. *Id.* at 1420-21. Under these circumstances, the Tenth Circuit found the insurer's communications directed to Oklahoma were "fortuitous, resulting from the [plaintiffs'] change of residence *after* the insurance policy was issued and the claim was filed." *Id.* at 1420 (emphasis in original).

Flechner cites *Rambo* for the proposition that his communications with Standard Metals cannot support personal jurisdiction because he only sent them to Alabama due to Standard Metals' unilateral change of address after the parties were no longer associated. Standard Metals contends *Rambo* is not factually analogous because the plaintiff insureds in that case changed residence after filing the claim under the policy. (Doc. 34 at 9-11). As Standard Metals would have it, Flechner's

13

notice of exercise of stock options constituted a "subsequent legally consequential transaction" by which he purposefully availed himself to jurisdiction in Alabama. (Doc. 34 at 9). Accordingly, Standard Metals contends its unilateral relocation to Alabama is irrelevant to the question of personal jurisdiction.

At first blush, Flechner's emails to Standard Metals in Alabama could appear to constitute his purposeful availment to the privilege of doing business in Alabama; they were addressed and sent to Alabama and concerned the exercise of the very stock options that are the subject of this lawsuit. However, "in the context of the particular claims asserted" here, with a focus "on the relationship among the defendant, the forum, and the litigation," Flechner's emails do not subject him to personal jurisdiction in Alabama. *Giraldo v. Drummond Co., Inc.*, 2012 WL 2358306 at *5. The undisputed facts establish the emails Flechner sent to Alabama constitute his only contacts with this state. This lawsuit seeks a declaratory judgment regarding contracts executed in Colorado by a Colorado resident and what was at the time a corporation incorporated and headquartered in Colorado. One of these contracts, the separation agreement, required Flechner to exercise any stock options within three years of leaving the company, which he did. While Flechner did direct communications to Alabama, he only did so because Standard Metals unilaterally moved its corporate headquarters here some eighteen months after they parted ways. Under these circumstances, Flechner's

emails do not establish the necessary "substantial connection" with Alabama such that he could reasonably expect to be haled into court here.

Although not binding on a court in this circuit, the Tenth Circuit's opinion in *Rambo* is highly persuasive and supports the conclusion that personal jurisdiction over Flechner is non-existent in Alabama. Moreover, in light of the circumstances of this case, Standard Metals' argument that Flechner's emails to Alabama occurred after the company relocated here—as opposed to the plaintiffs in *Rambo*, who filed their insurance claim before relocating to Oklahoma—does not diminish *Rambo's* persuasiveness or demand a different outcome here. In both *Rambo* and the instant case, the only actions directed toward the forums in question were necessitated by the respective plaintiffs' unilateral decisions to relocate.

Nor do the other cases cited by Standard Metals necessitate a different conclusion. Standard Metals contends this case is more analogous to *Turner v. Regions Bank,* 770 F. Supp. 2d 1244 (M.D. Ala. 2011), in which a Florida defendant was subject to personal jurisdiction in Alabama when it tried to collect a discharged debt from the plaintiffs after they moved to Alabama. While the plaintiffs' debt was incurred in Florida, it had been discharged by a bankruptcy court in Alabama, a fact known by the defendant. The trial court found personal jurisdiction was proper in Alabama where the defendant knew the debt was discharged in Alabama and should have known that it could be subject to legal

15

action here if it violated the discharge injunction by continuing to attempt to collect on plaintiffs' debt. *Id.* at 1249-50. Here, the undersigned agrees with Flechner that, because his exercise of options did not violate a court order or injunction, the logic of *Turner* does not extend to the facts of this case. Additionally, the very substance of the claims in *Turner* arose directly from the defendant's contacts with Alabama. Conversely, Flechner's contacts in this case are irrelevant to the ultimate resolution of the matter; the communications' only significance arises from Standard Metals' attempts to use them as a jurisdictional hook.

The other cases Standard Metal relies upon to differentiate this case from *Rambo* do not support a finding of personal jurisdiction here because each case involved non-resident defendants who financed or otherwise facilitated the purchase of real property located in Alabama. *See* Doc 34 at 6-7 (citing *Brannon v. Finance America, LLC*, 483 F. Supp. 2d 1136, 1139 (M.D. Ala. 2007) (California mortgagee purposefully availed itself to jurisdiction in Alabama by refinancing home located in Alabama)); Doc. 34 at 7-9 (citing *Bowling v. Founders Title Co.,* 773 F.2d 1175, 1179 (11th Cir. 1985) (California escrow agent purposefully availed itself to jurisdiction in Alabama by agreeing to act as escrow agent regarding tract of real property located in Alabama)); Doc. 34 at 9 (citing *Radcliffe v. Founders Title Co.,* 720 F. Supp. 170, 172 (M.D. Ga. 1989) (same)).

Finally, Standard Metals also relies on *Turner* and the cases cited therein to

assert that Flechner is subject to personal jurisdiction in Alabama because he stood to benefit financially from the stock options he sought to exercise via emails to Alabama. (Doc. 34 at 11-13). However, the possibility of pecuniary gain as a result of a contact with a forum does not necessitate a finding of personal jurisdiction; it merely "has bearing on a minimum contacts analysis." *Turner*, 770 F. Supp. 2d at 1249. In this case, the fact that Flechner stood to benefit financially if Standard Metals honored his options under the Amendment cannot overcome the dearth of Flechner's contacts with Alabama and his lack of personal availment to Alabama.

For all of the foregoing reasons, even when accepting the complaint's allegations as true and construing all reasonable inferences in favor of Standard Metals, Flechner is entitled to judgment as a matter of law regarding lack of personal jurisdiction over Flechner. FED. R. CIV. P. 50(a); *see Snow,* 450 F.3d at 1317.

### 2. Amendment Would Not Cure Lack of Personal Jurisdiction.

As noted , Standard Metals has filed a motion to amend the complaint to add two additional individual defendants, previously described as fictitious parties in the state court complaint. (Doc. 20). Specifically, Standard Metals seeks to add as defendants Clyde Smith and David Smith, residents of Canada and Washington, respectively. According to the proposed amended complaint attached to the

motion, these additional defendants are also seeking to exercise options pursuant to the Amendment and have "engaged in numerous actions and communications in Etowah County, Alabama, related to the subject matter of this action." (Doc. 20-1 at 3). Presumably these actions in Alabama consist of demands to exercise options under the Amendment. (*See* Doc. 20-6 at 2; Doc. 20-7 at 2). The proposed amended complaint does nothing to address the lack of personal jurisdiction over Flechner, the sole defendant named in the operative complaint. Those claims will be dismissed for the reasons stated above. Accordingly, the motion to amend (Doc. 20) is **DENIED** as futile. *See Mewburne v. Cheytac, USA, LLC,* 2013 WL 1346569 *2 (N.D. Ala. March 29, 2013). However, this denial is without prejudice to Standard Metals' right to name the proposed defendants in the appropriate forum.

## V. CONCLUSION

For all of the foregoing reasons, the undersigned concludes Flechner is not subject to personal jurisdiction in Alabama. Additionally, while Flechner's motion to dismiss initially sought the alternative relief of transfer to the District of Colorado, Flechner has since withdrawn that request and any arguments other than lack of personal jurisdiction. Standard Metals has not requested transfer as an alternative to dismissal and the parties have not briefed the issue of venue and whether any transfer would be effectuated by 28 U.S.C. § 1404 or § 1406. While

the transfer to the District of Colorado could be appropriate "in the interest of justice" under 28 U.S.C.§ 1631, there is no indication that Standard Metals will be deprived of an opportunity to address its claims against: (1) Flechner in Colorado where the parallel action his pending; or (2) against either proposed additional defendant in the appropriate forum or forums.  Accordingly, Flechner's motion to dismiss will be granted in its entirety for want of personal jurisdiction.

    A separate order will be entered.

    **DONE** this 26th day of March, 2015.

                                      STACI G. CORNELIUS
                                      U.S. MAGISTRATE JUDGE